UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| BOBBY THOMAS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. V-07-68 |
| | § | |
| CORPUS CHRISTI INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION & ORDER

Pending before the Court is Defendant's Motion for Summary Judgment (Dkt. No. 17).  Having considered the motion, the responses thereto, the entire record, and the applicable law, the Court is of the opinion the motion should be granted.

### Factual Background[1]

This action arises out of Plaintiff Bobby Thomas' ("Thomas") allegations that Defendant Corpus Christi Independent School District ("CCISD") denied him employment benefits, subjected him to a hostile and offensive work environment, retaliated against him, and ultimately terminated his employment on the basis of his race. Thomas, an African-American, was at all relevant times a CCISD employee. Although Thomas was employed by CCISD in various capacities beginning in 1996, the events made the basis of this dispute concern his actions while working as a Paraprofessional II ("Paraprofessional")  in the Functional Behavior Improvement Unit ("FBI Unit") for special education

---

[1] The Court notes that Thomas has filed several objections to portions of CCISD's summary judgment evidence. The Court has considered both the evidence proffered and the objections thereto, and to the extent the Court has regarded portions of the evidence as necessary to the resolution of particular summary judgment issues, it hereby overrules Thomas' objections. To the extent such evidence has not be relied on by the Court, Thomas' remaining objections are denied as moot.

students at Richard King High School, a position he held from August 2004 to January 2006.[2] Paraprofessionals are charged with the duty of aiding assigned teachers with instructing, monitoring, and otherwise controlling mentally and physically handicapped students.[3] In January 2006, following a series of events which took place while Thomas served in this capacity, CCISD terminated Thomas' employment. Although Thomas worked for CCISD for approximately a decade, he was employed on an at-will basis and had no contract guaranteeing or otherwise indicating any entitlement of continued employment as a Paraprofessional.[4]

Thomas' claims stem from a series of incidents which occurred at various times during the 2004-05 and 2005-06 school years. During this time, Thomas—along with Paraprofessional Velma Garcia ("Garcia")—was assigned to assist the classroom of Todd Akers ("Akers"). Akers began compiling Thomas' annual performance appraisal for the 2004-05 school year in early March 2005. Apparently upset at what would eventually turn out to be a rather negative evaluation, Thomas met with Akers and King High School's Assistant Principal Doug Cross ("Assistant Principal Cross").[5] At this meeting, Thomas complained that Akers made false statements about him and was preparing a performance appraisal that failed to reflect his performance in prior years.[6] Although Thomas believes Akers was discriminating against him on the basis of his race, it is not clear whether Thomas specifically informed

_____

[2] Dkt. No. 1, ¶12; Dkt. No. 17, Ex. 5 at 163.

[3] Dkt. No. 17, Ex. 6.

[4] Dkt. No. 17, Ex. 23, ¶3.

[5] Dkt. No. 21, Ex. A at 14-15.

[6] *Id.*

Assistant Principal Cross of his concern.[7]

During the same school year, one of Akers' students had at various times experienced severe seizures which caused her to fall violently to the floor resulting in significant injury.[8] Shortly after the meeting between Thomas, Akers, and Assistant Principal Cross—in what he characterized as an effort to accommodate the student's safety needs—Akers cleared and carpeted the rear area of the classroom.[9] This clearance included the removal of Thomas' desk. Akers then offered Thomas access to both his and Garcia's desks.[10]

On March 29, 2005, Akers completed and delivered to Thomas the above-referenced performance appraisal. The appraisal reflected what Akers believed to be Thomas' highly unsatisfactory work, noting that Thomas either "[p]erforms job requirements but needs improvement" or "[d]oes not meet job requirements" in an impressive twelve of thirteen evaluative categories.[11] Among the deficiencies forming the basis of Akers' opinion were Thomas' disciplining students by withholding portions of their lunches, leaving students unsupervised at bus stops, failing to properly escort students to and from classes, and periodically sleeping in class.[12] Unsatisfied with the evaluation, Thomas again

---

[7] *Id.*; Dkt. No. 21, Ex. D. Although Thomas also claims to have complained to King High School Principal Bernadine Cervantes about racial discrimination, *see* Dkt. No. 21, Ex. D; Dkt. No. 1, ¶17, it is completely unclear from the evidence before the Court when this complaint was voiced. It is equally mysterious as to what allegedly discriminatory actions led to this complaint. It is clear, however, that Thomas at no time complained to Deborah Seeger, CCISD's Director of Auxiliary Personnel, that he was being mistreated on the basis of his race. Dkt. No. 17, Ex. 23, ¶11. Similarly, Thomas never took advantage of CCISD's formal grievance procedures to assert a complaint of race-based discrimination, retaliation, or improper workplace behavior. *Id.*

[8] Dkt. No. 17, Ex. 7 at 31.

[9] *Id.*

[10] *Id.*

[11] Dkt. No. 17, Ex. 8.

[12] Dkt. No. 17, Ex. 7 at 14-29.

met with Assistant Principal Cross to renew his concerns regarding Akers and his performance appraisal.[13] Assistant Principal Cross notified Thomas that he could file a rebuttal to the appraisal.[14]

Thomas prepared a rebuttal for Executive Director of Human Resources, Dr. Helen Gurely ("Dr. Gurley").[15] Although Thomas asserted that Akers "may have a personal matter or conflict" which may have slanted his evaluation, notably absent from Thomas' rebuttal is any contention that he believed his harsh appraisal to be even remotely based on or influenced by racial animus.[16] Nonetheless, Dr. Gurley—with the consent of Principal Bernadine Cervantes ("Principal Cervantes")—insisted that Thomas be re-evaluated.[17] After approximately one month had passed, Thomas was re-evaluated, this time being assessed by both Akers and Assistant Principal Cross.[18] Thomas' second review continued to reflect an utterly substandard level of performance.[19] Thomas' second performance appraisal was a near mirror image of his abysmal first.

During the following school year, concerns over Thomas' performance continued to surface as CCISD received several parent complaints casting serious doubt on Thomas' judgment and ability to work with special education students. One student's parent complained that Thomas had harassed and ridiculed her daughter in view of fellow students.[20] In an effort to address the matter, Principal Cervantes

---

[13] Dkt. No. 17, Ex. 5 at 209-13; 227-28.

[14] *Id.*

[15] Dkt. No. 17, Ex. 9.

[16] *Id.*

[17] Dkt. No. 17, Ex. 1, ¶6.

[18] Dkt. No. 17, Ex. 1, ¶7; Ex. 10.

[19] *Id.*

[20] Dkt. No. 17, Ex. 1, ¶10; Ex. 11.

provided Thomas with a verbal directive regarding his job duties and expectations.[21] Shortly thereafter, another parent complained that Thomas had taken money from her son in exchange for lunch meals he was entitled to receive free of charge.[22] Principal Cervantes met with the student and Garcia, both of whom substantiated the complaint and indicated that Thomas had taken money from other students for meals they were supposed to receive for free.[23] Before Principal Cervantes could confront Thomas regarding the second accusation, CCISD received yet another parent complaint. The third grievance was comprised of Principal Cervantes receiving a call from a parent who complained that Thomas had informed her daughter that she should call him if she ever needed a "real man."[24] Thomas globally asserts that the events underlying these complaints never occurred.[25]

Based on the severity of these complaints, on December 16, 2005, Principal Cervantes called the CCISD legal department to set in motion a formal investigation.[26] On that same day, Principal Cervantes attempted to contact Thomas to address the complaints lodged against him and inform him that he would be placed on temporary suspension pending the investigation's conclusion.[27] Principal Cervantes, however, was unable to locate Thomas. Although he was still on duty, Thomas was nowhere to be found: he was not in his assigned classroom; he did not respond to two announcements over the school-

---

[21] *Id.*

[22] Dkt. No. 17, Ex. 1, ¶¶11-14.

[23] *Id.*

[24] *Id.*

[25] Dkt. No. 21, Ex. D. Although Thomas contends that the parent complaints are unfounded, it is undisputed that they were lodged.

[26] Dkt. No. 17, Ex. 1, ¶15.

[27] *Id.*

5

wide intercom system; and he did not answer or otherwise respond to a call to his personal phone.[28] Thomas claims that he was in the gym, but offers no explanation as to why he failed to respond to the school-wide intercom announcements, answer his personal phone, or return to his assigned classroom.[29] The employee sign-out sheet for that day—located in Principal Cervantes' office—indicates that Thomas signed out at 4:45 p.m.[30] Principal Cervantes, however, was in her office during that time and has avowed that Thomas did not come by to sign out.[31] Principal Cervantes thus concluded that Thomas falsified his sign-out sheet, left work early without notifying school staff or seeking the appropriate permission, and abandoned his job duties.[32] Thomas has stated by affidavit that he did no such thing, but offers no explanation regarding his sign-out time and failure to respond to the numerous attempts at contacting him.[33] Because Principal Cervantes could not locate Thomas to discuss with him his temporary suspension, CCISD mailed Thomas a letter informing him of the suspension and investigation.[34]

On January 18, 2006, CCISD Police Chief, Captain Kirby Warnke ("Captain Warnke") completed the investigation of the parent complaints made against Thomas.[35] The investigation focused on the allegations that Thomas made the above-referenced inappropriate comment and accepted money

---

[28] *Id.*

[29] Dkt. No. 21, Ex. D.

[30] Dkt. No. 17, Ex. 1, ¶ 16.

[31] *Id.*

[32] *Id.*

[33] Dkt. No. 21, Ex. D.

[34] Dkt. No. 17, Ex. 1, ¶17; Ex.12; Ex. 23, ¶9.

[35] Dkt. No. 17, Ex. 13.

from students for lunch meals they were supposed to have received for free.[36] The investigation found that the complaining students reaffirmed their initial grievances and a CCISD employee—Garcia—witnessed the lunch meal incident.[37] After reviewing the investigation report, taking into consideration Thomas' extremely poor overall job performance, and reflecting upon her own investigation into the underlying matters, Principal Cervantes strongly recommended to Superintendent Jesus Chavez ("Superintendent Chavez") that Thomas be terminated immediately.[38]

Thomas then appealed his termination. At the appellate hearing, numerous witnesses testified to their recollection of the above-described events and Thomas presented his version.[39] At the conclusion of the hearing, the hearing officer upheld the termination decision.[40] The hearing officer, however, also took the opportunity to note that he found his decision troubling because (1) the only documentation furnished to him was Captain Warnke's investigation report and (2) CCISD failed to produce Principal Cervantes' recommendation letter to either the hearing officer or Thomas.[41] Notably, the hearing officer concluded that no evidence was presented indicating that the recommendation for termination or the termination itself was based upon any constitutionally impermissible reason.[42] Accordingly, the then-acting Interim Superintendent of Schools finalized the decision to terminate Thomas' employment.[43]

---

[36] *Id.*

[37] *Id.*

[38] Dkt. No. 17, Ex. 14. Principal Cervantes characterized Thomas' actions as "serious and highly inappropriate" and not reflective of "the culture and professionalism held in high esteem by CCISD."

[39] Dkt. No. 17, Ex. 17.

[40] *Id.*

[41] *Id.*

[42] *Id.*

[43] Dkt. No. 17, Ex. 18.

Thomas was replaced as a Paraprofessional by Stephen Bland, who is also African-American.[44]

Shortly thereafter, Thomas filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging that CCISD discriminated against him based on his race.[45] Following the EEOC's dismissal of the charge, Thomas filed the above-captioned civil action bringing claims of discrimination, retaliation, and hostile work environment.[46]

## Summary Judgment Standard

A summary judgment shall be issued if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Hall v. Thomas*, 190 F.3d 693, 695 (5th Cir. 1999). In considering a motion for summary judgment, the Court construes factual controversies in the light most favorable to the non-movant, but only if both parties have introduced evidence showing that an actual controversy exists. *Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998).  If the burden of proof at trial lies with the non-movant, the movant may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden is on the movant to convince the court that no genuine issue of material fact exists as to the claims asserted by the non-movant, but the movant is not required to negate elements of the non-movant's case. *Id.* at 323.

The non-moving party may not rest solely on its pleadings. *King v. Chide*, 974 F.2d 653, 656 (5th Cir. 1992). For issues on which the non-movant will bear the burden of proof at trial, that party must

---

[44] Dkt. No. 17, Ex. 1, ¶20.

[45] Dkt. No. 17, Ex. 19.

[46] Dkt. No. 1, ¶¶1-22.

produce summary judgment evidence and designate specific facts which indicate that there is a genuine issue for trial. *Celotex*, 477 U.S. at 322; *Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). Needless to say, unsubstantiated assertions are not competent summary judgment evidence. *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994); *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1429 (5th Cir. 1996) ("[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden."). The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To meet its burden, the non-moving party must present "significant probative" evidence indicating that there is a triable issue of fact. *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1995).  If the evidence rebutting the summary judgment motion is only colorable or not significantly probative, summary judgment should be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

## Discussion

### I. Thomas' Race Discrimination Claim

Title VII prohibits discrimination by employers "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...." 42 U.S.C. § 2000e-2(a). To evaluate Title VII claims of race discrimination based on circumstantial evidence, the Court applies the evidentiary burden-shifting framework derived from *McDonnell Douglas Corp. v. Green*. 411 U.S. 792 (1973). This framework requires a charging party to first establish a prima facie case. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). If the plaintiff makes out a prima facie case, a presumption of discrimination arises and the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions.

*See McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007); *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999). If the defendant meets its burden, the burden then returns to the plaintiff to generate a genuine issue of material fact that either (1) the defendant's reason is false and merely served as pretext for the discrimination; or (2) the defendant's reason, although true, was only one of the reasons for its action and that some unlawful discrimination was a motivating factor in the defendant's decision. *See Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004); *Crawford v. U.S. Dept. of Homeland Sec.*, 245 Fed. Appx. 369, 377-78 (5th Cir. 2007). This requires the plaintiff to rebut each non-discriminatory reason articulated by the defendant. *See id.*

Thomas can establish a prima facie case of race discrimination by showing (1) he belongs to a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) other, similarly-situated individuals who are outside the protected class were treated more favorably. *See Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007).

Thomas claims that he suffered racially motivated discrimination in the form of receiving a poor performance appraisal, having his desk removed, and ultimately being terminated. However, because non-retaliation based Title VII claims are only intended to address "ultimate employment decisions," and not "every decision made by employers that arguably might have some tangential effect upon those ultimate decisions," the removal of Thomas' desk and his receiving a poor performance appraisal cannot support his discrimination claim. *Messer v. Meno*, 130 F.3d 139, 140 (5th Cir. 1997) (determining that ultimate employment decisions include "hiring, discharging, promoting, compensating, or granting leave," but not "disciplinary filings, supervisor's reprimands, and even poor performance by the

employee"); *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007).[47] Although termination is undisputably classified as an ultimate employment decision, Thomas was immediately replaced by an African-American and he has presented the Court with no evidence that similarly-situated individuals outside of his protected class were treated any more favorably. To prove his prima facie case, Thomas must demonstrate that CCISD gave preferential treatment to a non-African-American employee under " 'nearly identical circumstances'; [ sic ] that is, 'that the misconduct for which [Thomas] was discharged was nearly identical to that engaged in by ... [other] employees.' " *Okoye v. Univ. of Tex. Houston Health Science Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001). Thomas has failed to make such a demonstration. Accordingly, he has failed to satisfy his burden of proving a prima facie case of race-based discrimination.

Even if the Court were to presume that Thomas established a prima facie case of discrimination, he has not provided the Court with anything to rebut CCISD's numerous legitimate, non-discriminatory reasons supporting its decision to terminate his employment. The Court finds it unnecessary to delve into further detail as to each of CCISD's justifications for terminating Thomas because Thomas has proffered no summary judgment evidence indicating pretext or mixed motive as to CCISD's actions. Thomas' only support for his discrimination complaint is his subjective, self-serving claim that he believes he was the subject of race-based discrimination. Such conclusory beliefs are insufficient to allow Thomas' racial discrimination claim to survive summary judgment. *Waggoner v. City of Garland*, 987 F.2d 1160, 1166 (5th Cir. 1993) (a charging party's subjective belief that supervisors fabricated reasons to terminate him to mask their discriminatory motives was "mere speculation, insufficient to

---

[47] The Court notes that even if it were to consider such actions as cognizable under Title VII, as with CCISD's decision to terminate Thomas, Thomas has failed to offer even a scintilla of evidence indicating his race factored into CCISD's decision to take such actions or that other, similarly-situated, non-African-American employees were treated more favorably.

create a genuine issue of material fact").

**II. Thomas' Retaliation Claim**

As an initial matter, Thomas' retaliation claim fails as a matter of law because he did not identify such a claim before the EEOC and is thus precluded from raising it now. One of the central purposes of an EEOC charge is to place an employer on notice of "the existence and nature of the charges against [it]." *EEOC v. Shell Oil Comp.*, 466 U.S. 54, 77 (1984); *see also Young v. City of Houston*, 906 F.2d 177, 179 (5th Cir. 1990); *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd.*, 40 F.3d 698, 711-12 (5th Cir. 1994). Thomas did not include the word "retaliation" in his EEOC charge, did not check the "retaliation" box in the "Discrimination Based On" portion of his EEOC charge, and the charge otherwise fails to set forth allegations that CCISD retaliated against him. Therefore, Thomas may not bring his retaliation claim now.

Even if the Court were to consider Thomas' retaliation claim, however, it would certainly fail. Retaliation claims are to be analyzed under the same evidentiary framework as Title VII race-based discrimination claims. *See McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007). To establish a prima facie case of retaliation under Title VII, Thomas must establish the following three elements: (1) he engaged in a protected activity; (2) CCISD took an adverse employment action against him; and (3) a causal link exists between that protected activity and the adverse employment action. *Id.*

The Supreme Court has recently made clear that, unlike a claim of mere discrimination, a claim of retaliation need not rest upon an "ultimate employment decision"; a plaintiff need only establish that as a result of some protected activity, he suffered a "materially adverse" action, one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. Santa Fe Railroad Co. v. White*, 548 U.S. 53, 68 (2006). Even if the Court were to presume that each

of the events over which Thomas complains—the removal of his desk, his poor performance review, and his ultimate termination—constitute a materially adverse action, and that based on Thomas' complaining to his superiors and/or filing his rebuttal he has established a prima facie case of retaliation, summary judgment would be appropriate as to Thomas' retaliation claim.

As with Thoms' discrimination claim above, CCISD has provided the Court with several legitimate, non-discriminatory reasons for its employment actions. Specifically, Akers removed Thomas' desk out of a legitimate concern for the safety of a student; Thomas' poor performance reviews were based solely on his poor performance, as indicated both by Akers' initial review and justifications thereof as well as Akers and Assistant Principal Cross' subsequent re-evaluation; and Thomas' termination was based on the numerous allegations of his misconduct and his unexplained failure to respond to several efforts to call him into Principal Cervantes' office to discuss the final and most severe of the parent complaints. Just as these reasons were non-discriminatory, they are non-retaliatory. Aside from Thomas' conclusory allegations and unsupported speculation—all of which are purely self-serving in nature—he has offered the Court nothing indicating any of CCISD's actions were even tangentially related to his engaging in a protected activity. Thomas' retaliation claim is thus subject to summary judgment.

**III. Thomas' Hostile Work Environment Claim**

As with Thomas' retaliation claim, his hostile work environment claim cannot be asserted now because it was not developed before the EEOC. The scope of inquiry on a Title VII action is properly limited to the scope of issues raised before the EEOC or which could be reasonably expected to grow out of the charge of discrimination. *Young v. City of Houston*, 906 F.2d 177, 179 (5th Cir. 1990). Thomas' EEOC charge indicated that he wished to challenge only his termination, and the scope of that

challenge restricts the issues that can be litigated in this Court. Because Thomas failed to raise his hostile work environment claim in his EEOC charge, he cannot do so at this time.

However, for the sake of completeness, the Court notes that even if it were to consider Thomas' hostile work environment claim, it would be subject to summary judgment. Hostile work environment claims brought under Title VII are analyzed according to burden-shifting framework applied to Title VII discrimination and retaliation claims. *LeMaire v. Louisiana Dept. of Transp. and Dev.*, 480 F.3d 383, 393-96 (5th Cir. 2007). To establish a prima facie case of a hostile work environment, Thomas must show that: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on Thomas' membership in the protected group; (4) the harassment affected a term, condition, or privilege of his employment; and (5) CCISD knew or should have known of the harassment, yet failed to take prompt remedial action.[48] *Id.*

When attempting to determine whether a workplace's environment is one that is legally hostile, courts are directed to take into account "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). For harassment to be actionable, it must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (internal quotation marks and citation omitted); *Watkins v. Texas Dept. of Crim. Justice*, 269 Fed. Appx. 457, 463-64 (5th Cir. 2008). "To be actionable, the challenged conduct must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so." *Harvill*

---

[48] The Court notes that, in the Fifth Circuit, the final element is not required when the supposed harasser is a supervisor. *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999).

*v. Westward Commc'ns LLC*, 433 F.3d 428, 434 (5th Cir. 2005) (citing *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir. 1999)). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.' " *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998)). Thomas has not presented the Court with anything even approaching objectively offensive, racially motivated workplace conduct, and as such, his hostile work environment claim patently fails on the merits and no issue of material fact remains for factfinder determination.

**IV. Thomas' Section 1981 Claim**

Section 1981 provides that "all persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a) (2001). However, as CCISD points out, Section 1981 itself does not provide an avenue for suit against a local government entity. The proper—and exclusive—means by which a plaintiff may bring an action against a local government entity for an alleged Section 1981 violation is to bring a claim pursuant to Section 1983. *See Oden v. Okitebebbeha County, Miss.*, 246 F.3d 458, 462-63 (5th Cir. 2001). A plaintiff who fails to invoke Section 1983 "essentially fail[s] to state a claim" for a deprivation of rights guaranteed by Section 1981. *Felton v. Polles*, 315 F.3d 470, 482 (5th Cir. 2002) abrogated on other grounds by *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) (observing that requiring Section 1981 claims to be brought pursuant to Section 1983 "is not a mere pleading informality"). As such, Thomas' Section 1981 claim is uncognizable as a mater of law.

Furthermore, even if Thomas had complied with the appropriate pleading requirements, his Section 1981 claim would fail on the merits. Claims of race-based discrimination brought under Section

1981 are governed by the framework applied to claims of employment discrimination brought under Title VII. *See Harrington v. Harris*, 118 F.3d 359, 367 (5th Cir. 1997) (citing *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 n.2 (5th Cir. 1996)). To establish a prima facie case for a Section 1981 claim, Thomas must show that (1) he is a member of a racial minority; (2) CCISD had an intent to discriminate on the basis of race; and (3) the discrimination concerned "the making and enforcing of a contract." *See Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (1997) (citing *Green v. State Bar of Texas*, 27 F.3d 1083, 1086 (5th Cir. 1994)). As with Thomas' claims above, nothing before the Court gives rise to a genuine issue of material fact as to whether CCISD intentionally discriminated against Thomas on the basis of his race. Therefore, summary judgment is proper as to Thomas' final claim.

**Conclusion**

Based on the foregoing, Defendant's Motion for Summary Judgment (Dkt. No. 17) is **GRANTED** and this case shall be **DISMISSED**.

It is so **ORDERED**.

Signed this 16th day of December, 2008.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE